IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **GEORGE W. VENTEICHER, III,** | ) | **CASE NO. 8:09CV272** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **SMYRNA AIR CENTER, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, and alternatively, a Motion to Transfer Venue to the United States District Court for the Middle District of Tennessee (Filing No. 5) submitted by Defendant Smyrna Air Center Inc. ("SAC"). For the reasons below, the Court finds that SAC purposefully intended to conduct commercial activity in Nebraska; jurisdiction and venue are proper in Nebraska; and transfer is not warranted under the particular facts of this case.

**FACTS**

Plaintiff George W. Venteicher, III, ("Venteicher") is a resident of Palmyra, Otoe County, Nebraska. (Filing No. 1-2, Compl., ¶ 1.) SAC is a corporation based in Smyrna, Rutherford County, Tennessee. (Filing No. 7-2, ¶ 2.) SAC acted as sales representative for a 1974 Cessna 310Q, Colemill conversion Aircraft, N730K (the "Aircraft"). (*Id*., ¶ 3.) SAC advertised the Aircraft for sale on its website, www.smyrnaaircenter.com, as well as in "Trade-A-Plane," a weekly national aircraft sales magazine. (*Id*., ¶ 4.) The website advertisement listed $94,500 as the asking price and 3,413 hours as the Aircraft's total airframe time. (Filing No. 11-3.) In response to the advertisement on SAC's website,

Venteicher contacted SAC to discuss the potential purchase of the Aircraft. (Filing No. 11-2, ¶ 3.)

Following Venteicher's initial contact, the parties exchanged multiple e-mails and phone calls from their respective locations regarding the potential sale. (*Id*.; Filing No. 7-2, ¶ 6.) During these discussions, SAC represented to Venteicher that similar models of the Aircraft in their as-is condition were valued in excess of $90,000. (Filing No. 11-2, ¶ 3.) In addition, SAC prepared and submitted an Aircraft Bluebook valuation for the Aircraft showing the value of the Aircraft to be in excess of the Aircraft's asking price. (*Id*., ¶ 4; Filing No. 11-4.) The parties also discussed a number of mechanical issues that needed to be addressed to make the Aircraft airworthy. (Filing No. 11-2, ¶ 8.) Based on these issues, Venteicher eventually authorized and paid for additional work and inspections on the Aircraft, which SAC performed in Tennessee. (*Id*., ¶ 9; Filing No. 7-2, ¶ 12.)

After completing negotiations, the parties entered into an agreement wherein Venteicher promised to pay $90,000 for the Aircraft. (Filing No. 11-2, ¶¶ 6, 7.) Venteicher paid for Eric Douglas, a SAC flight instructor and sales representative, to deliver the Aircraft to Crete, Nebraska, where Venteicher performed a visual verification. (*Id*., ¶ 9.) After Venteicher completed his inspection, the parties closed on the purchase and Venteicher handed checks to Douglas. (Filing No. 11-2 ¶ 9; Filing No. 7-2, ¶ 13.) After completing the purchase, Venteicher discovered that a number of items, and corresponding costs, would be necessary to make the Aircraft airworthy, exceeding SAC's representations. (Filing No. 11-2, ¶ 8.) Venteicher also claims that the total airframe time of the Aircraft exceeded the 3,413 hours that SAC represented in the website advertisement and during contract negotiations. (Filing No. 1-2, Compl., ¶ 7(c).)

Venteicher filed this action in the District Court of Otoe County, Nebraska, on June 17, 2009. The Complaint asserts causes of action for breach of contract and fraudulent misrepresentation. As damages, Venteicher seeks the difference between the contract price and fair value of the Aircraft, the difference between the stated cost to correct items needed to make the Aircraft airworthy and the actual cost, the value of the loss of use of the Aircraft, and other expectancy damages. On August 12, 2009, SAC properly removed the case to the United States District Court for the District of Nebraska. SAC filed this motion on August 24, 2009, claiming that this Court lacks personal jurisdiction over SAC and venue is improper. In the alternative, SAC asks the Court to transfer the case to the United States District Court for the Middle District of Tennessee.

## STANDARDS OF REVIEW

### I.   Personal Jurisdiction

To survive a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). When jurisdiction has been challenged, "the plaintiff has the burden of proving facts supporting personal jurisdiction," *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *Dever* 380 F.3d at 1072), but need only "establish[] a prima facie case" that personal jurisdiction exists. *Steinbuch*, 518 F.3d at 585 (citing Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006)). The plaintiff's showing "must be tested, not by the pleading alone, but by affidavits and exhibits

presented" in support of and in opposition to the motion to dismiss for lack of personal jurisdiction. *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007) (quoting *Dever*, 380 F.3d at 1072). Further, this Court must view the evidence in the light most favorable to the plaintiff and must resolve all factual conflicts in his favor. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991).

**II.     Improper Venue**

While motions under Federal Rule of Civil Procedure 12(b)(3) for improper venue are typically resolved by looking to 28 U.S.C. § 1391, venue in a removal case is governed by 28 U.S.C. § 1441. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953); *Carter v. American Bus Lines, Inc.,* 169 F. Supp. 460, 469 (D. Neb. 1959). Section 1441 expressly states that "the district court of the United States for the district and division embracing the place where such action is pending" is the proper venue for a removed action. *See also Polizzi*, 345 U.S. at 666.

**III.    Transfer Venue**

Where jurisdiction and venue are proper, transfer of venue is governed by 28 U.S.C. § 1404. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court is not limited to these factors, but must consider all relevant factors and examine the particular circumstances in the case at hand. *Terra Int'l., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The moving party bears the burden in showing why a change of forum is warranted. *Stinnett v. Third Nat'l Bank of Hampden County*, 443 F.Supp. 1014, 1017 (D. Minn. 1978).

**DISCUSSION**

**I.      Rule 12(b)(2) - Lack of Personal Jurisdiction**

The determination of whether this Court has personal jurisdiction over a non-resident defendant presents two issues: (1) whether the requirements of the Nebraska long-arm statute are satisfied and (2) whether the exercise of jurisdiction over this Defendant will violate the Due Process Clause of the Fourteenth Amendment. *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citing *Dakota Indus.*, 28 F.3d at 915). Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (2008),[1] has been interpreted to extend jurisdiction over non-resident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Wagner v. Unicord Corp.*, 247 Neb. 217, 221, 526 N.W.2d 74, 77 (1995). Thus, the Court need only determine whether the assertion of

---

[1]Neb. Rev. Stat. § 25-536 provides:

A court may exercise personal jurisdiction over a person:
    (1) Who acts directly or by an agent, as to a cause of action arising from the person:
        (a) Transacting any business in this state;
        (b) Contracting to supply services or things in this state;
        (c) Causing tortious injury by an act or omission in this state;
        (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
        (e) Having an interest in, using, or possessing real property in this state; or
        (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or
    (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (2008).

5

jurisdiction in this case offends constitutional limits. This inquiry focuses on (1) whether SAC had minimal contacts with Nebraska, and (2) whether subjecting SAC to suit in Nebraska comports with standards of fair play and justice.

### A.     Minimum Contacts with Nebraska

In order to exercise personal jurisdiction over a non-resident defendant, due process requires that a defendant have "minimum contacts" with the forum state such that maintenance of a suit against that defendant does not offend "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The non-resident defendant's conduct and connection with the forum state must be sufficient that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Coen*, 509 F.3d at 905. "Purposeful availment" means that the defendant's contacts with the forum state are not "random," "fortuitous," "attenuated," or the result of "unilateral activity of a third person or another party." *Burger King*, 471 U.S. at 475 (internal quotations and citations omitted). A defendant's minimum contacts with the forum state must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.

*Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558 (8th Cir. 2003) (citing *Clune v. Alimak AB*, 233 F.3d 538, 544 n.8 (8th Cir.2000)).

Following Venteicher's initial response to SAC's advertisement, the parties exchanged several e-mails and telephone calls to negotiate the sale of the Aircraft. In so doing, SAC's marketing and negotiation efforts were aimed directly at a Nebraska resident. After successfully negotiating the purchase contract, SAC agreed to deliver the Aircraft physically to Venteicher in Nebraska. None of these contacts was random, attenuated, or the result of the unilateral action of a third person or another party. The fact that Venteicher answered the advertisement and requested delivery does not diminish the wilfulness of SAC's contact with Nebraska. SAC directed communication to Nebraska and physically visited the state with the intent of inducing commercial activity there. Because these contacts were purposeful and intentional, the Court finds SAC had sufficient minimum contacts with Nebraska.

### B.     Fair Play and Substantial Justice

Once it has been determined that the non-resident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the non-resident defendant comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476. The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Coen*, 509 F.3d at

905 (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994)).  The fourth and fifth factors, however, are of secondary importance and not determinative.  *Id.; see also Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983).  In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Land-O-Nod*, 708 F.2d at 1340 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  Based on the relationship between SAC, Nebraska, and this action, as applied to the fairness factors listed above, this Court's jurisdiction over SAC comports with fair play and substantial justice.

### 1. Nature and Quality of the Contacts

The nature and quality of SAC's contacts with Nebraska suggest jurisdiction is fair. SAC's contacts with Nebraska consisted primarily of telephone contacts and e-mail transmissions to Nebraska.  The Eighth Circuit has reaffirmed as recently as 2006, that "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause," *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006). However, frequent communications, when taken together with some other action directed toward the forum state, may help establish sufficient minimum contacts*.  Northwest Airlines, Inc. v. Astraea Aviation Servs. Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997).  Taken together, SAC's contacts with Nebraska, including (1) SAC's communications directed at Nebraska, (2) the place of performance of the parties' contract, and (3) SAC's physical presence in Nebraska, all indicate that jurisdiction is fair and proper.

### a. Effect of Contact with Nebraska

The Supreme Court has recognized an "effects test" that allows "personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus.*, 946 F.2d at 1390-91 (internal quotations omitted); *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The Eighth Circuit applied this test in *Finley v. River North Records, Inc.*, 148 F.3d 913 (8th Cir. 1998). In *Finley*, an Arkansas concert promoter sued a non-resident record company for fraud based on representations to the concert promoter that certain performers would appear at a concert in the state. *Id.* at 915-16. In finding personal jurisdiction proper, the Eighth Circuit recognized the effects of the harm felt in Arkansas as well as overt actions by the record company directly aimed at the state. *Id.* at 916. These actions included sending promotional materials into Arkansas with the knowledge they would be used to commercially promote the concert and phone conversations to individuals in Arkansas confirming the details of the concert. *Id.* at 916-17. Because this fraudulent conduct intended to induce commercial activity in Arkansas, the concert promoter could reasonably anticipate being haled to court there and jurisdiction was fair. *Id.* at 917.

The present case is similar to *Finley* in that SAC directed its contacts and allegedly false representations at the forum state to induce commercial activity there. As SAC contends, the initial advertisement was not sufficient to establish a fair expectation of jurisdiction because its advertising efforts were not directed specifically at Nebraska. Following Venteicher's response to the advertisement, however, SAC negotiated with Venteicher regarding the purchase of the Aircraft with the knowledge that Venteicher was

located in Nebraska. During these negotiations, SAC prepared and submitted to Venteicher a Bluebook valuation for the Aircraft. Venteicher alleges that through this valuation and other conversations, SAC represented that the Aircraft in its "as is" condition was valued at more than $90,000. The parties also discussed additional costs to maintain the Aircraft and to correct certain items affecting the airworthiness of the Aircraft. Venteicher claims that the work needed to make the Aircraft airworthy was more extensive and expensive than SAC represented. Venteicher also claims that SAC overstated the total airframe time. Through each of these contacts, SAC intended to make it more likely that Venteicher purchase the Aircraft, which he did. As with the record company in *Finley*, SAC's contacts were meant to induce commercial activity specifically in Nebraska, and actually did so. The intent underlying these contacts, and the effect of the contacts, suggest that jurisdiction over SAC in this action comports with notions of justice and fair play.

### b. *Place of Performance and Injury*

The contract between SAC and Venteicher supports a finding of personal jurisdiction. The Supreme Court has rejected the contention that a contract by itself provides the necessary contacts for jurisdiction in the forum state. *See Burger King*, 471 U.S. at 478-79. Instead, the Supreme Court listed four factors to determine whether a non-resident's contract creates sufficient contacts. These factors include prior negotiations, future contemplated consequences, the terms of the contract, and the parties' actual course of dealing. *Id.* at 479. As noted above, the prior negotiations and future contemplated consequences were all directed specifically at Nebraska. The purpose and effect of SAC's negotiations with Venteicher was a purchase agreement for the Aircraft.

Thus, the negotiations and future contemplated consequences indicate that the contract created minimum contacts with Nebraska.

The contract terms and course of dealing also support a finding of jurisdiction. Federal and state courts in Nebraska have found that a non-resident defendant can be "constitutionally subjected to suit in the state where the contract is to be performed." *Gray v. Lewis & Clark Expeditions, Inc.*, 12 F. Supp. 2d 993, 998 (D. Neb. 1998) (quoting *Williams v. Gould*, 443 N.W.2d 577, 588 (Neb. 1989)). The most basic obligations of the purchase agreement were that SAC promised to sell, and Venteicher promised to pay for, the Aircraft. The Complaint and affidavits show that the parties agreed that a SAC employee would deliver the plane to Crete, Nebraska, where Venteicher would inspect, pay for, and take possession of the Aircraft. These actions, while initiated by Venteicher, were not unilateral. By agreeing to deliver the plane to Nebraska at Venteicher's expense, SAC furthered its business transaction in the forum state by facilitating delivery and closing.[2] Thus, the most basic obligations of the contract were to be performed and actually were performed in Nebraska, and each of the factors affecting personal jurisdiction regarding a contract shows SAC had minimum contacts with the forum state.

SAC asks the Court to refer to *Gray*, arguing that the law and analysis are very similar to this case. In *Gray*, a Nebraska couple reserved space on a Wyoming company's

---

[2] The Eighth Circuit has stated "the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982). This statement does not control the present case for several reasons. First, SAC itself delivered the Aircraft rather than arranging for its delivery. Second, Venteicher's payment closed the transaction thus completing his entire obligation under the contract.

11

raft ride. *Gray*, 12 F. Supp. 2d at 994. The Nebraska couple discovered the rafting company through an advertisement in a nationwide camping magazine. *Id.* The couple then initiated contact with the rafting company by calling its 800 number and completing the reservations with a credit card. *Id.* The court found that personal jurisdiction did not exist because the rafting company did not direct any purposeful activities at Nebraska, nor did the couple's claim arise out of the company's Nebraska activities. *Id.* at 997-98. The present case is distinguishable from *Gray*. In *Gray*, the only activities the rafting company directed at Nebraska were nationwide advertising, making an 800 number available to Nebraska, and accepting the couple's reservation and credit card number over the phone. *Id.* at 997. In contrast, each of SAC's contacts subsequent to the advertisement were directed specifically at Venteicher while in Nebraska to induce a commercial transaction culminating there. The contract contemplated results in Nebraska, and each party's performance took place in Nebraska. G*ray* is distinguishable from the present case and jurisdiction is consistent with fair play.

### c.     *Physical Presence in Nebraska*

Coupled with SAC's other contacts in Nebraska, its employee's visit to Nebraska indicates personal jurisdiction is proper. While presence in a state will often enhance a non-resident defendant's contact with a state and indicate forseeability of suit there, visits to the forum are not outcome determinative. *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226-27 (8th Cir. 1987). In *Austad*, the Court determined that a non-resident law firm defendant lacked minimum contacts even where two employees of the law firm visited South Dakota for two days. *Id.* at 227. The Court reasoned that the only connection

between the defendants and the forum was its representation of a South Dakota corporation in litigation taking place wholly outside the forum. *Id.* at 226-27. The Eighth Circuit distinguished *Austad* and found jurisdiction proper where a commercial actor purposefully directed its efforts toward residents of the forum state. *Bell Paper Box*, 22 F.3d at 820. The court in *Bell Paper Box* reasoned that jurisdiction was proper where correspondence was directed at the forum and the performance of the contract, including delivery, occurred within the forum. *Id.*

SAC's presence in Nebraska is similar to the commercial actor in *Bell Paper Box*. SAC not only directed communication to a Nebraska resident, but intended these communications to induce commercial results in the forum. Further, full performance of the contract, including delivery, occurred within Nebraska. SAC's physical presence was not random or ancillary to its contacts with Nebraska. Rather, it was the culmination of a series of direct negotiations with a Nebraska resident. Thus, SAC's brief physical presence in Nebraska, coupled with its other contacts, also indicates that jurisdiction is fair and proper.

### 2. Quantity of SAC's Contacts

The quantity of SAC's contacts supports jurisdiction. Neither the affidavits nor the pleadings place a fixed number on SAC's contacts with Venteicher and Nebraska. SAC describes the contacts between itself and Venteicher as "numerous." (Filing No. 7-2, ¶ 6.) Venteicher states that after the initial contact, the parties exchanged "multiple" e-mails and telephone calls. (Filing No. 11-2, ¶ 3.) No bright-line figure determines when sufficient quantity of minimum contacts have been met to determine when jurisdiction is fair.

However, at a minimum, the parties agree that their contact with each other was extensive. As noted above, many of these contacts were directed at Nebraska to induce commercial activity there. These allegations, particularly when coupled with the nature of the contacts, support a finding of jurisdiction in Nebraska.

### 3.    Relation of the Cause of Action to the Contacts

The allegations in the Complaint and affidavits establish that SAC's contacts relate to Venteicher's causes of action. The third element of the above test -- the relationship between the cause of action and the contacts -- gives rise to the distinction between specific and general jurisdiction. *Steinbuch*, 518 F.3d at 586. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Bell Paper Box,* 22 F.3d at 819. When specific jurisdiction exists, "[a]ll that is required is that a commercial actor purposefully direct its efforts toward residents of the forum state." *Id.* at 820. "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King.*, 471 U.S. at 474.

Taken together, SAC's actions directed at Venteicher in the forum state are sufficient to establish specific jurisdiction in Nebraska.[3] The Eighth Circuit defines "cause

---

[3] Neither Venteicher's Complaint nor his brief and affidavits in opposition to this Motion establish sufficient facts to show that SAC had a "substantial, continuous, and systematic" relationship with Nebraska. *See Helicopteros Nacionales de Columbia, S.A., v. Hall*, 466 U.S. 408, 415 (1984). Thus, the Court will not further analyze whether it has general jurisdiction over SAC.

of action" as "a situation or state of facts that entitle a party to bring an action and to see judicial relief." *Rhodes v. Jones*, 351 F.2d 884, 886 (8th Cir. 1965). Venteicher asserts causes of action for breach of contract and fraudulent misrepresentation. Venteicher asserts breach of contract because SAC overstated the market value of the Aircraft, and understated the airframe time and costs needed to make the Aircraft airworthy. According to Venteicher's affidavit, SAC prepared and sent an Aircraft Bluebook valuation to Venteicher in Nebraska to show that the Aircraft's value exceeded $90,000. Venteicher claims these representations breached the purchase agreement for the Aircraft. Venteicher's fraudulent misrepresentation claim is also based on SAC's representations regarding the Aircraft's value, airworthiness costs, and total airframe time. In a light most favorable to Venteicher, these allegations represent interstate obligations which SAC voluntarily assumed. Thus, these contacts with Nebraska relate to Venteicher's causes of action and support a finding of specific jurisdiction.

### 4. Nebraska's Interest in Providing a Forum and Convenience of the Parties

The secondary factors support a finding of jurisdiction. Nebraska clearly has an interest in providing a forum for breach of contract and fraudulent misrepresentation claims by its residents. Further, the parties' convenience is, at a minimum, neutral, because whether the action is brought in Nebraska or Tennessee, one party will have to travel for litigation and the other will not. No evidence suggests that SAC's burden to travel to Nebraska would be any greater than Venteicher's burden to travel to Tennessee. Therefore, jurisdiction in Nebraska does not offend notions of justice and fairness.

The five factors in the personal jurisdiction test support a finding of specific jurisdiction in Nebraska. As stated above, the primary concern of a personal jurisdiction inquiry is the relationship between the defendant, the forum, and the litigation. *Land-O-Nod Co.*, 708 F.2d at 1340. SAC made multiple contacts specifically directed at Nebraska which were neither random, fortuitous, attenuated, or the result of the unilateral action of Venteicher or a third party. Further, personal jurisdiction comports with fairness and justice because SAC specifically intended to induce commercial activity in Nebraska and actually did so. Therefore, personal jurisdiction is proper in Nebraska and SAC's motion to dismiss under Rule 12(b)(2) must be denied.

## II.     Rule 12(b)(3) - Venue in The District of Nebraska

Venue is proper in Nebraska because SAC voluntarily removed this action to United Stated District Court. While venue questions are typically resolved by looking to 28 U.S.C. § 1391, venue in a removal case is governed by 28 U.S.C. § 1441. *Polizzi*, 345 U.S. at 665. Section 1441 expressly states that "the district court of the United States for the district and division embracing the place where such action is pending" is the proper venue for a removed action. *See also Polizzi*, 345 U.S. at 666. The parties dispute whether venue is proper under § 1391. However, as this is a removal case, venue is governed by § 1441. Venteicher originally filed suit in the district court of Otoe County, Nebraska. SAC then voluntarily removed the action to the United States District Court for the District of Nebraska. Thus, venue is proper in the District of Nebraska.

**III.     Motion to Transfer Venue**

In the event that the Court found jurisdiction and venue proper, SAC asks that the Court transfer to the Middle District of Tennessee, Nashville Division. SAC argues that transfer should be analyzed under 28 U.S.C. §§ 1406(a) and 1631. However, these provisions address curing defective venue and transfer for want of jurisdiction, respectively. Because jurisdiction and venue are proper in Nebraska, transfer of venue in this action is governed by 28 U.S.C. § 1404. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court is not limited to these factors, but must consider all relevant factors and examine the particular circumstances in the case at hand. *Terra Int'l., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The moving party bears the burden in showing why a change of forum is warranted. *Stinnett v. Third Nat'l Bank of Hampden County*, 443 F.Supp. 1014, 1017 (D. Minn. 1978). Considering the facts in this case, the Court finds that SAC has not met its burden of showing that a transfer to Tennessee is warranted.

**A.     Convenience of the Parties and Witnesses**

In balancing the convenience of parties and witnesses, courts consider several factors including (1) the convenience of the parties, (2) the convenience of the witnesses, including the willingness of the witnesses and adequacy of deposition testimony, (3) the accessibility of documents and records, (4) the place where the alleged wrong occurred, and (5) the applicability of each forum's substantive law. *Terra Int'l*, 119 F.3d at 697.

No evidence indicates it will be any less convenient for SAC to litigate in Nebraska than it would for Venteicher to litigate in Tennessee. Thus, the balance of convenience of the parties does not weigh decisively in favor of one forum or the other. In considering the convenience of the witnesses, the Court looks to "whether the forum to which transfer is sought is so inconvenient as to inhibit the access of one party or the other to necessary witnesses." *Terra Int'l., Inc. v. Mississippi Chemical Corp.*, 922 F. Supp. 2d 1334, 1360 (N.D. Iowa 1996). No evidence suggests that non-party witnesses would be unwilling or unable to testify. Further, no evidence suggests that any essential witnesses could not be compelled to appear for discovery under the broad reach of the Federal Rules of Civil Procedure. Thus, the Court finds that the convenience of the witnesses neither favors nor disfavors transfer. Similarly, no evidence suggests that transfer to Tennessee would allow better access to documents or any other evidence. The number of documents supporting the claims and defenses in this case appears relatively small and nothing indicates that litigation in Tennessee will provide better access to documents. Therefore, the factor of access to documents and any other evidence is neutral.

The convenience factors that consider the place of the alleged wrong and the applicable law neither support nor inhibit transfer of venue. As the district court in *Terra Int'l* noted, "the place of occurrence alone has little to do with actual convenience of the parties conducting litigation as the result of even when there is no especial evidentiary significance to the location of [the subject of the litigation]." *Terra Int'l*, 922 F. Supp. 2d at 1361. While the place of performance of the contract was significant in determining personal jurisdiction, it plays no significant evidentiary role affecting the convenience of the parties. Further, though the Court does not address choice-of-law issues, Venteicher's

18

claims appear to be based on Nebraska law. While a district court in Tennessee is certainly capable of applying Nebraska law, in terms of convenience, this factor clearly does not favor transfer. Because none of the convenience factors strongly favors transfer, SAC does not meet its burden in showing transfer is warranted.

### B. Interest of Justice

Although any civil case may be transferred to another district where the case might have been brought, courts generally afford great deference to the plaintiff's choice of forum. *Terra Int'l,* 119 F.3d at 695. Considerations under this factor include (1) the plaintiff's choice of forum, (2) judicial economy, (3) the comparative costs to each party of litigating in either forum, (4) the ability of each party to enforce judgment, (5) impediments to a fair trial, (6) issues with conflict of law, and (7) the advantage of local courts interpreting local law. *Id.* at 696.

The plaintiff's choice of forum is given more weight when the chosen forum is also the plaintiff's residence. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71, 72 (2d Cir. 2000); 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3849 (3d ed. 2007). SAC provides no evidence that suggests the Court should give Venteicher's choice of forum less weight. Additionally, none of the other interest of justice factors indicates a decisive tip toward transfer to Tennessee. Nothing tends to show that transfer to Tennessee will reduce the costs to both parties or improve judicial economy. Further, forum in Nebraska presents no impediments to a fair trial or enforcing a judgment, nor would transfer to Tennessee greatly improve conflict of law issues or the ability to interpret local law. SAC has not shown that transfer would do more than simply shift the

inconvenience of litigation from one forum to another. Therefore, the Court finds transfer to the Middle District of Tennessee improper.

Accordingly,

IT IS ORDERED that Defendant Smyrna Air Center's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, to Transfer Venue (Filing No. 5) is denied.

DATED this 8th day of October, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge